IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TAMARA ORR                                                                                           PLAINTIFF

v.                                    Case No. 1:21-cv-1027

RELIANCE STANDARD LIFE
INSURANCE COMPANY                                                                         DEFENDANT

**MEMORANDUM OPINION AND JUDGMENT**

Plaintiff Tamara Orr filed this action against Defendant Reliance Standard Life Insurance Company pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq*. In her complaint, Plaintiff alleges that her claim for Long Term Disability (LTD) benefits was wrongly denied by Defendant. The Administrative Record has been filed, and both parties have submitted briefs. ECF Nos. 12, 15. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

In 2006, Plaintiff began working as a sales associate for Ivan Smith Furniture Company in Shreveport, Louisiana.[1] Plaintiff participated in a long-term disability insurance plan issued by Defendant. The plan's policy (the Plan) provides that an insured is eligible for LTD benefits if the insured is "Totally Disabled" or suffers from a "Total Disability." The Plan explains that an insured is considered "Totally Disabled if, due to an Injury or Sickness, he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis." Total Disability is based on the insured's ability to perform her "Regular Occupation,"

---

[1] Although Plaintiff worked in Shreveport, Louisiana, she is a resident of Union County, Arkansas, and Defendant is a corporation doing business in the State of Arkansas. *See* ECF No. 4, at 1.

which the Plan defines as "the occupation the Insured is routinely performing when Totally Disability begins." The Plan further states that Defendant "will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale."

### A. Plaintiff's Claim for LTD Benefits

In 2018, Plaintiff began experiencing neck pain. She visited Dr. Clinton Netherland, who referred her for a computerized tomography (CT) scan of her neck. The CT scan showed foraminal stenosis at the C5 to C6 vertebrae due to cervical degenerative disc disease. Dr. Netherland's notes indicate that he ordered magnetic resonance imaging (MRI) of Plaintiff's spine. The MRI showed prominent spondylotic ridging at the C5 to C6 and C6 to C7 vertebrae with spinal cord compression. A neurosurgeon, Dr. J. Zachary Mason, recommended surgery. Plaintiff's last day of work was May 4, 2019, and on May 6, 2019, Dr. Mason performed an anterior cervical discectomy and fusions at the C5 to C6 and C6 to C7 vertebrae.

Plaintiff applied for LTD benefits, claiming disability beginning May 6, 2019, due to cervical stenosis. The Plan required a 180-day "Elimination Period," meaning that, after applying for LTD benefits but before receiving those benefits, the insured must experience 180 consecutive days of Total Disability. Plaintiff's Elimination Period ended and her LTD benefits began on November 2, 2019. On November 26, 2019, Plaintiff applied for Social Security disability (SSD) benefits pursuant to the United States Social Security Act.[2]

The Plan provides that LTD benefits terminate "on the earliest of: (1) the date the Insured ceased to be Totally Disabled; (2) the date the Insured dies; (3) the Maximum Duration of Benefits . . . has ended; or (4) the date the Insured fails to furnish the required proof of Total

---

[2] In her application for SSD benefits, Plaintiff was represented by Allsup, a company that assists with an individual's application for SSD benefits. Defendant retained Allsup on Plaintiff's behalf.

Disability." Accordingly, Defendant periodically required Plaintiff to produce updated medical records so that it could evaluate Plaintiff's continued eligibility for LTD benefits. Throughout 2019, Plaintiff continued providing records that corroborated her disability claim. For example, on July 18, 2019, Dr. Mason recommended that Plaintiff not return to work for a month. On August 15, 2019, Dr. Mason signed an order stating that Plaintiff was unable to return to work for three months. Similarly, on October 29, 2019, Plaintiff visited Dr. Blake C. Phillips, who noted that Plaintiff's neck pain was "severe" and "gradually worsening." Dr. Phillips noted that Plaintiff experienced "no relief" from Dr. Mason's May 6, 2019 procedure.

On December 4, 2019, Plaintiff visited Dr. John Ledbetter, a Pain Management Specialist. She reported ongoing neck pain, and Dr. Ledbetter recommended a trigger point injection, which he administered on December 10, 2019. In the following months, Dr. Ledbetter continued administering injections: on January 20, 2019, Dr. Ledbetter performed a lumbar epidural steroid injection; on January 28, 2020, Dr. Ledbetter administered nine trigger point injections; and on March 9, 2020, Dr. Ledbetter performed a cervical epidural steroid injection. Those injections did not alleviate Plaintiff's pain.

However, on June 29, 2020, Dr. Ledbetter performed bilateral cervical medial branch nerve blocks. Dr. Ledbetter detailed that, before discharging Plaintiff, he re-examined her and found that she had "100% pain relief as a result of [the] procedure on both sides." Upon discharge, he encouraged Plaintiff to "continue with home exercises." On July 30, 2020, Plaintiff underwent another CT scan, which revealed stability within Plaintiff's surgery site (the C5 through C7 vertebrae). On August 3, 2020, Plaintiff visited Dr. Netherland, who noted that Plaintiff's "neck pain and swelling [had] resolved" and there were no complications within the surgery site (the C5

through C7 vertebrae).  Defendant states that this is the last medical record that it received before it issued its final decision.  ECF No. 15, at 17.

In August 2020, Defendant's clinical staff reviewed Plaintiff's medical records and concluded that Plaintiff was no longer entitled to LTD benefits.  One staff member, a nurse, concluded that "sedentary restrictions and limitations are supported while claimant undergoes treatment for continued neck pain through 6/29/20 when claimant reported 100% relief" but that, after June 29, 2020, Plaintiff was "capable of return to full duty as imaging was negative for an ongoing structural defect."  On August 25, 2020, Defendant notified Plaintiff of its decision to discontinue her LTD benefits.  In that notice, Defendant informed Plaintiff of her right to appeal within 180 days, or by February 21, 2021.

**B. Plaintiff's Appeal**

On September 28, 2020, Plaintiff, through counsel, submitted a letter stating that she "administratively appeals the denial of long-term disability . . . benefits."  Plaintiff further stated that she was "investigating" and might "provide additional information," before requesting "that no final decision be made until [she] notif[ied] [Defendant] in writing that [her] submission and administrative appeal [were] complete."  Plaintiff did not include any documentation with this appeal letter.  In response, Defendant informed Plaintiff that, under ERISA, it is obligated to render a decision on a pending appeal "within forty-five (45) days of the date of the appeal," though it is "allowed an additional forty-five (45) days if circumstances do not permit [Defendant] to make a final determination in the initial forty-five (45) day time frame allotted."  ECF No. 15, at 6; *see also* 29 C.F.R. § 2560.503-1(i)(1)(i), (i)(3) (explaining that the plan administrator shall notify a claimant of its determination no later than 45 days after receipt of the claimant's request for review).

4

When reviewing Plaintiff's claim, Defendant hired two independent physicians—Dr. Farjallah Khoury and Dr. Ryan Trombly—to evaluate Plantiff's medical records. Each physician issued two reports: one dated October 26, 2020, and one dated December 9, 2020. In Dr. Khoury's October 26 report, he listed the documents that he had reviewed, with the latest document dated October 11, 2020. He found that Plaintiff's diagnoses included cervical post-laminectomy syndrome, lumbago, and chronic pain syndrome, but he concluded that, with some restrictions, Plaintiff "can work full time in a sustained capacity" because her "[p]rognosis is good for full-time work within the documented restrictions/limitations." Those limitations included the inability to lift or carry greater than 20 pounds occasionally or 10 pounds frequently and the ability to climb ladders only occasionally. However, Dr. Khoury found that Plaintiff can sit, stand, walk, bend, grasp, grip, reach, climb stairs, and drive without restrictions. In his December 9 report, Dr. Khoury stated that, as of June 29, 2020, Plaintiff's restrictions included only that she can lift or carry no more than 30 pounds occasionally and 15 pounds frequently and can only occasionally climb a ladder, crawl, kneel, bend, or crouch. Although he recommended a three-month follow-up to "assess overall condition," he did not retract his previous finding that Plaintiff could return to work, subject to the documented restrictions. In both reports, Dr. Khoury noted that he had twice attempted to contact Dr. Ledbetter to discuss Plaintiff's condition, but Dr. Ledbetter did not answer Dr. Khoury or return his calls.

In Dr. Trombly's October 26, 2020 report, he stated that Plaintiff's diagnoses included multinodular thyroid, cervical spondylosis with radiculopathy, neck pain, and tobacco use. He noted that Plaintiff had undergone surgery in May 2019, and stated that "normally this takes 6 months to heal." Dr. Trombly further noted that Plaintiff had no hardware complications following her surgery and had "normal strength." He ultimately concluded that Plaintiff "should be able to

work." Like Dr. Khoury, Dr. Trombly opined that Plaintiff had some restrictions, including that she can: sit for 8 hours daily, provided that she can shift and stretch for 5 minutes every hour; walk for 1 hour at a time for a total of 8 hours daily, provided that she can stretch and rest for 5 minutes hourly; stand for 1 hour at a time, for a total of 8 hours daily, provided that she can stretch and rest for 5 minutes daily; lift 5 pounds constantly; lift 15 pounds frequently; lift 30 pounds occasionally; drive; stoop, crawl, kneel, and bend occasionally; complete keyboarding and fine finger manipulation constantly; reach at waist level constantly; and reach overhead frequently. In his December 9 report, Dr. Trombly found that, as of June 29, 2020, Plaintiff could return to work, subject to the documented restrictions. He explained that "[a]lthough [Plaintiff] reported ongoing pain, the records establish that the [May 2019 surgery] had healed well, and the claimant had regained normal strength." Like Dr. Khoury, Dr. Trombly noted that he twice attempted to contact Dr. Ledbetter to discuss Plaintiff's condition to no avail.

On October 31, 2020, Defendant provided copies of Drs. Khoury and Tromby's October 26 reports, stating, "[p]lease send any additional/rebuttal information you wish to have assessed during this appeal no later than November 16, 2020 (fourteen (14) business days from the date of this letter)." Defendant warned Plaintiff that if it did not receive a reply from her by November 16, 2020, it would "proceed with making [its] final determination based on the information on file at that time." On November 5, 2020, Defendant again contacted Plaintiff, asking her to send "any additional information/rebuttal" that she wanted Defendant to consider in its appeal review. Defendant stated, "[u]ltimately, it is your responsibility to provide any information to be considered, and, if received, we would be happy to review any such documentation." At that time, Defendant set a new deadline for the production of additional or rebuttal information: November 19, 2020. However, Plaintiff did not submit any additional or rebuttal information. Ultimately,

on January 20, 2021, Defendant informed Plaintiff that it had reached a final decision and would uphold its denial of LTD benefits.

On February 9, 2021, Plaintiff contacted Defendant and stated that she was "gathering additional relevant evidence for consideration" and would submit her "appeal package" before April 21, 2021. Defendant responded, informing Plaintiff that she is only entitled to one appeal, which concluded on January 20, 2021. However, on March 5, 2021, Plaintiff contacted Defendant again. She reiterated her intent to appeal, stating that she "supplements any and all prior appeals." She attached eight documents for Defendant's consideration, including five affidavits, dating December 7, 2020, two medical records from Dr. Netherland dated December 7, 2020, and a medical record from "Smackover Family Practice," dated February 24, 2021.[3] On April 15, 2021, Plaintiff inquired about the status of her appeal. Defendant responded, informing Plaintiff that, pursuant to "internal and statutory guidelines," only one appeal is permitted and that appeal had concluded. Having exhausted her administrative remedies, Plaintiff filed the instant action, seeking judicial review of Defendant's denial of benefits. ECF No. 4.

## II. STANDARD

ERISA provides that a plan participant may bring a civil action to "recover benefits due to him under the terms of his plan" and "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Although ERISA provides no standard of review, the Supreme Court instructs the reviewing court to conduct a de novo review unless the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If a plan gives the

---

[3]Plaintiff attached an affidavit authored by herself, along with affidavits authored by Codi Crecelius, Renee Cook, Betty Mattox, and Ronnie Walker. Plaintiff identifies Crecelius, Cook, Mattox, and Walker as friends and family members.

administrator discretionary authority, the court should review the administrator's decision under a deferential "abuse of discretion" standard. *Janssen v. Minneapolis Auto Dealers Ben. Fund*, 477 F.3d 1109, 1113 (8th Cir. 2006). For an abuse-of-discretion standard to apply, the Eighth Circuit requires "express discretion-granting language" different from the common proof-of-loss provisions usually found in insurance policies. *Brown v. Seitz Foods, Inc., Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998).

Here, the Plan clearly and unequivocally grants Defendant discretionary authority, stating: "[Defendant] shall serve as the claims review fiduciary" and "has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." Plaintiff does not dispute that the Plan grants Defendant discretionary authority and instead concedes the fact. *See* ECF No. 12, at 27. However, Plaintiff believes that a heightened standard of review is appropriate for two reasons: first, Defendant had a conflict of interest in deciding her claim, and, second, Defendant committed procedural irregularities. "[A] claimant is entitled to 'a less deferential standard of review' when he or she shows 'a palpable conflict of interest or a serious procedural irregularity . . . which . . . caused a serious breach of the plan administrator's fiduciary duty . . . .'" *Roebuck v. USAble Life*, 380 F. Supp. 3d 852, 864 (E.D. Ark. Mar. 30, 2019) (second, third, and fourth alterations in original) (citation omitted). Therefore, the Court considers each of Plaintiff's arguments in turn.

Plaintiff first argues that she is entitled to de novo review because Defendant had a conflict of interest. ECF No. 12, at 28. The Eighth Circuit, in a now-abrogated decision, "recognized a court could apply 'less deferential review' in certain circumstances." *McIntyre v. Reliance Standard Life Ins. Co.*, 972 F.3d 955, 959 (8th Cir. 2020) (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998) (*abrogated in part by Metro. Life Ins. v. Glenn*, 554 U.S. 105, 115-16

8

(2008))). However, the Eighth Circuit has since explained that a district court errs where it "rel[ies] on the presence of a conflict of interest to justify de novo review" because a conflict of interest is not "a gateway to de novo review." *Id.* at 959-61. Instead, a reviewing court is required to treat a defendant's conflict of interest "as a factor in determining whether [the defendant] abused its discretion." *Id.* at 963; *see also Glenn*, 554 U.S. at 115-17 (explaining that a conflict of interest does not *require* a change in standard of review, but rather, requires reviewing courts to "take account of several different considerations of which a conflict of interest is one"); *Roebuck*, 380 F. Supp. 3d at 864 ("The Eighth Circuit Court of Appeals has held that the mere existence of a conflict of interest is not enough to invoke the less deferential standard of review.").

The importance of this factor will vary depending on whether the circumstances suggest a high or low likelihood that the conflict of interest affected the benefits decision. *Glenn*, 554 U.S. at 117. For example, if an administrator has a history of biased claims administration, the factor may be more significant. *Id.* However, if the administrator has taken "active steps to reduce bias and to promote accuracy," the factor will be less significant. *Id.* One indication of a low likelihood that the conflict of interest affected the benefits determination is that the administrator "consulted a neutral, independent doctor . . . to review the record and make a recommendation" and "gave [the insured's] physicians an opportunity to respond." *See Cooper v. Metro. Life Ins. Co.*, 862 F.3d 654, 661 (8th Cir. 2017); *see also Glenn*, 554 U.S. at 117 ("It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . .").

Here, Plaintiff is correct that a conflict of interest exists because Defendant is both the administrator and the insurer responsible for paying LTD benefits. However, the Court will not apply de novo review simply because a conflict of interest exists. *See, e.g.*, *Roebuck*, 380 F. Supp.

9

3d at 864. Instead, the Court must consider the details of Defendant's review of Plaintiff's claim. Any potential for the conflict to affect its benefits decision was minimized by the "active steps" taken by Defendant "to reduce potential bias and to promote accuracy." *Glenn*, 554 U.S. at 117. These "active steps" include Defendant's decision to hire two neutral, independent physicians (Drs. Khoury and Trombly) to review Plaintiff's medical records and provide a recommendation, decision to hire a Vocational Rehabilitation Specialist (Matthew Boks) to perform an occupational assessment, and attempts to contact Plaintiff's treating physician (Dr. Ledbetter) so that he could respond to the independent consultants' findings. These precautions fostered fairness in Defendant's review of Plaintiff's records and, ultimately, in Defendant's decision to discontinue Plaintiff's LTD benefits. Thus, de novo review, on the basis of a conflict of interest, is not warranted.

Plaintiff next asserts that de novo review is appropriate because Defendant committed procedural irregularities. "To alter the standard of review or affect our review under the abuse-of-discretion standard, a procedural irregularity must rise to the level of a 'serious breach of the plan trustee's fiduciary duty to the plan beneficiary.'" *Waldoch*, 757 F.3d at 830 (footnote omitted) (citation omitted); *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 988 (8th Cir. 2014) ("The procedural error must leave 'the court with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.'" (citation omitted)). "Challenges to ERISA procedures are evaluated under the substantial compliance standard." *Sedrick*, 500 F. App'x at 338 (citation omitted). The purpose of ERISA procedures is to provide the insured with a "full and fair review," and "[t]he ERISA regulations promulgated by the Department of Labor 'provide insight into what constitutes full and fair review.'" *Id.* (citation omitted).

Plaintiff fails to show that Defendant committed procedural irregularities, specifically, irregularities serious enough to "leave 'the court with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.'" *See Johnson*, 775 F.3d at 988. Plaintiff points to several allegedly significant procedural irregularities. Plaintiff first argues that Defendant denied her claim without considering additional information and documentation that she submitted. ECF No. 12, at 34. However, Plaintiff gave notice of her appeal on September 28, 2020, and did not submit the additional information and documentation to Defendant until March 5, 2021. During that almost six-month period, Defendant kept Plaintiff apprised of the status of her appeal. Defendant informed Plaintiff of the applicable procedural deadlines, such as the 45-day decision deadline for all appeals and the 14-day deadline for providing additional or rebuttal information in response to Drs. Khoury and Trombly's reports. In fact, Defendant requested additional or rebuttal information on multiple occasions, but Plaintiff did not respond, even to tell Defendant that her investigation and collection of records was delayed.

Most significantly, Defendant had already concluded its review when Plaintiff submitted the eight additional documents, and Defendant disregarded those documents because its determination was, by then, final. As Defendant explains, "[i]f Plaintiff believed that she needed more time to gather information required to prove her claim, [she] could have taken full advantage of the 180-day appeal period and submitted her appeal closer to the February 21, 20201 [sic] deadline," but "[i]nstead, she appealed the decision on September 28, 2021, and this triggered the deadlines established by the ERISA regulations." ECF No. 15, at 18.

The instant facts mirror those in *Shedrick v. Marriott International, Inc.*, in which the insured argued that the insurer "failed to adequately consider the additional medical information he provided after the appeal process was completed." *Shedrick v. Marriott Intern., Inc.*, 500 F.

11

App'x 331, 338 (5th Cir. 2012) (per curiam). The Fifth Circuit found that the insurer substantially complied with ERISA's procedures, allowing the insured to enjoy full and fair review, because the insurer "explained more than once why additional benefits were being denied" and because the insured "had multiple opportunities to provide supplemental documentation during the review process, which lasted over four months." *Id.* at 339. Similarly, here, Defendant's decision to disregard materials submitted after its decision was final does not constitute a procedural irregularity sufficient to trigger de novo review.

Plaintiff also argues that Defendant committed a procedural irregularity when it did not explain its disagreement with her treating physicians' opinions. However, the Court agrees with Defendant that there was no disagreement to explain. Defendant agreed with Plaintiff's physicians' opinions that Plaintiff was unable to work, as demonstrated by the fact that Defendant paid LTD benefits for almost one year. However, Defendant then relied on Drs. Ledbetter and Netherland's opinions when concluding that Plaintiff was no longer entitled to LTD benefits. Stated simply, Drs. Ledbetter and Netherland found that, as of June 29, 2021, Plaintiff experienced complete pain relief, and that is consistent with Defendant's conclusion that Plaintiff was no longer Totally Disabled. Further, Drs. Khoury and Trombly were unable to discuss their findings—or any potential disagreements—with Dr. Ledbetter because he would not answer or return their calls. Thus, Defendant did not violate any ERISA procedures by not detailing "any basis for disagreeing" with Plaintiff's treating physicians. *See* ECF No. 12, at 33.[4]

---

[4] In *Black & Decker Disability Plan v. Nord*, the Supreme Court held that administrators need not afford any special deference to a treating physician's opinion, whether procedurally or substantively. 538 U.S. 822, 834 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

12

Next, Plaintiff asserts that Defendant relied on vocational opinion evidence for the first time on appeal and did not afford Plaintiff reasonable time to rebut that evidence. ECF No. 12, at 33 ("[T]hey imposed restrictions disqualifying Plaintiff from the 75-pound lifting requirement of her job."). This argument fails for several reasons. The Plan defines Total Disability as an insured's ability to perform her Regular Occupation, and it defines Regular Occupation "as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale." Plaintiff disagrees with Defendant's description of her position as defined by the national economy. More specifically, Plaintiff contends that her job as a sales associate at Ivan Smith Furniture requires her to regularly lift 75 pounds, Drs. Khoury and Tromby's findings prove that she cannot regularly lift 75 pounds, and she therefore cannot perform her job, which Defendant incorrectly characterizes as being "light."

However, Defendant relied on a Vocational Rehabilitation Specialist, Matthew Boks, to determine what Plaintiff's job duties were. He described her duties as requiring light strength, as she must lift, carry, push, and pull 20 pounds occasionally, 10 pounds frequently, and a negligible amount constantly. Plaintiff did not offer an alternative definition of her Regular Occupation, other than to submit Ivan Smith Furniture's description of her job, which did include a requirement that she lift up to 75 pounds regularly. However, the Plan's language incontrovertibly states that it will not use the "unique duties performed for a specific employer or in a specific locale."

Ultimately, Defendant considered the requirements of Plaintiff's job in accordance with the Plan's language and, when comparing her Regular Occupation (as defined by the national economy) with Drs. Khoury and Trombly's descriptions of her limitations, it concluded that Plaintiff could return to work. Although Defendant did not specifically mention "vocational opinion evidence" in its initial, August 25, 2020 denial letter, it included the Plan's definition of

Totally Disabled and Total Disability, including the language stating than an insured is Totally Disabled when she cannot perform the material duties of her Regular Occupation. This does not constitute a procedural irregularity warranting de novo review.

Finally, Plaintiff argues that Defendant procedurally erred by failing to consider the eight documents that she submitted on March 5, 2021. The timeline, as outlined above, speaks for itself. Defendant gave Plaintiff multiple opportunities to submit additional information, but she failed to do so until after Defendant had finalized its appeal. As Defendant repeatedly informed Plaintiff, it is obligated to render a decision on all appeals within 45 days, barring an exceptional circumstance. It was not a procedural irregularity for Defendant to decline to consider the eight documents or otherwise reopen its already finalized decision.

Ultimately, Plaintiff points to no procedural irregularity that "rise[s] to the level of a 'serious breach of the plan trustee's fiduciary duty,'" and de novo review, based on procedural irregularities, is inappropriate. *Roebuck*, 380 F. Supp. 3d at 864 (citation omitted). Therefore, the Court review Defendant's denial of LTD benefits for an abuse of discretion.

### III. DISCUSSION

Under an abuse of discretion standard, the Court will "reverse the plan administrator's decision only if it is arbitrary and capricious." *Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d 696, 701 (8th Cir. 2008) (citation omitted). "A decision is arbitrary if made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Shedrick v. Marriott Intern., Inc.*, 500 F. App'x 331, 340 (5th Cir. 2012) (per curiam) (citation omitted). "When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, 'it should not be disturbed.'" *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007) (citation omitted). "Substantial evidence is 'more than a

scintilla but less than a preponderance.'" *Roebuck*, 380 F. Supp. 3d at 866 (quoting *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000)).

The Court may consider the quantity and quality of evidence before Defendant, while remaining mindful of the Eighth Circuit's instruction that courts should be hesitant to interfere with the administration of an ERISA plan. *See Groves v. Metro. Life Ins. Co.,*, 438 F.3d 872, 875 (8th Cir. 2006). The Court does not "'weigh the evidence anew' and render a decision," but instead, "only ask[s] whether a reasonable person could reach the decision [the administrator] reached and whether the decision was supported by substantial evidence in the record." *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 832 (8th Cir. 2014) (citation omitted).[5]

Plaintiff's brief is almost exclusively dedicated to her argument that Defendant procedurally erred such that de novo review is warranted, but she does briefly argue that Defendant abused its discretion in denying her claim because her complaints of pain were corroborated and there was no "reasoned basis" to discontinue benefits. ECF No. 12, at 37. The Court disagrees.

Defendant highlights the fact that, on June 29, 2021, Plaintiff received nerve blocks which completely eliminated her neck pain. Drs. Khoury and Trombly opined that, because her pain had been resolved, she could return to work with some limitations. Until *after* Defendant's review was complete, Plaintiff did not submit any documentation showing that, after June 29, 2021, she was still experiencing pain or was otherwise Totally Disabled. Under the Plan's language, Plaintiff

---

[5]The Eighth Circuit has explained:

> In reviewing whether administrators have abused their discretion, we generally ask: whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language in the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

*Hankins v. Standard Ins. Co.*, 677 F.3d 830, 834 (8th Cir. 2012) (citation omitted).

15

was required to establish her Total Disability on a continuing bases, and when Plaintiff failed to do so, Defendant discontinued her LTD benefits. Defendant did not deny Plaintiff's LTD benefits arbitrarily or capriciously, but rather, its decision was reasonable and supported by substantial evidence in the administrative record. Therefore, the Court will not reverse that denial. *See, e.g.*, *Jackson*, 530 F.3d at 701.

## V.  CONCLUSION

For the foregoing reasons, the Court's **AFFIRMS** Defendant's decision to deny LTD benefits, and judgment will be entered in Defendant's favor. The instant Memorandum Opinion and Judgment shall constitute final judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED**, this 21st day of December, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge